# EXHIBIT C

9/21/2021 10:46 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 57443152
By: Courtni Gilbert
Filed: 9/21/2021 10:46 AM

CAUSE NO. _____

| | | |
|---|---|---|
| **LA PORTE HOSPITALITY LLC DBA DAYS INN** § § § | | **IN THE DISTRICT COURT** |
| *PLAINTIFF,* § § § | | |
| VS. § § § | | **HARRIS COUNTY, TEXAS** |
| **RENAISSANCE RE SYNDICATE 1458 LLOYD'S AND MT. HAWLEY INSURANCE COMPANY** § § § § § | | |
| *DEFENDANTS.* § | | _____ **JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, La Porte Hospitality LLC dba Days Inn ("Plaintiff"), and files this **Plaintiff's Original Petition** complaining of Renaissance RE Syndicate 1458 Lloyd's and Mt. Hawley Insurance Company (collectively "Defendants" or "Insurers"), and for cause of action, Plaintiff would respectfully show the following:

### A. DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4.

### B. PARTIES

2. Plaintiff, La Porte Hospitality LLC dba Days Inn, is a Texas limited liability company.

3. Defendant, Renaissance RE Syndicate 1458 Lloyd's ("Lloyd's") is an unincorporated association of underwriters who have underwritten a proportion of the total liability of the commercial property insurance policy in question. Said association of underwriters can be served by serving their agent: Lloyd's America, Inc., Legal Department, 280 Park Avenue, East Tower 25th Floor New York, NY 10017.

4. Defendant, Mt. Hawley Insurance Company ("Mt. Hawley"), is an insurance company doing business in the State of Texas, which may be served through the Texas Commissioner of Insurance c/o Texas Department of Insurance, via hand delivery to 333 Guadalupe, Austin, Texas 78701, or via Certified Mail to Chief Clerk Office, P.O. Box 149104, MC 112-2A, Austin, Texas 78714-9104, with the Commissioner / TDI forwarding process to Craig W. Kliethermes, President of Mt. Hawley Insurance Company with address at 9025 N. Lindbergh Drive, Peoria, Illinois 61615. As it relates to the events giving rise to this Petition, Plaintiff invokes the right to institute this suit against any entity that was conducting business using the assumed or common name ofDefendants. Pursuant to Tex. R. Civ. P. 28, Plaintiff moves the Court to order Defendants to substitute their true name if different from the names stated herein. Plaintiff requests service at this time.

## C. JURISDICTION

5. The Court has jurisdiction over Lloyd's and Mt. Hawley because they engage in the business of insurance in the State of Texas, and the causes of action arise out of their business activities in the State of Texas, including those in Harris County, Texas, with reference to this specific case.

## D. VENUE

6. Venue is proper in Harris County, Texas, because the insured property is situated in Harris County, Texas. Tex. Civ. Prac. & Rem. Code § 15.032.

## E. CONDITIONS PRECEDENT AND NOTICE

7. All conditions precedent to recovery have been performed, waived, or have occurred.

8. Defendants received a pre-suit notice complying with Texas Insurance Code Section 542A.003. The pre-suit notice included a damage report that Plaintiff obtained from an independent adjuster showing the actual amount of loss. The pre-suit notice was served on Defendants on July 22, 2021. Defendants made a request for reinspection but never scheduled a reinspection.

### F. AGENCY AND *RESPONDEAT SUPERIOR*

9. Whenever in this petition it is alleged that Lloyd's and Mt. Hawley did any act or omission, it is meant that Lloyd's and Mt. Hawley themselves or their agents, officers, servants, employees, or representatives did such act or omission, and it was done with the full authorization or ratification of Lloyd's and Mt. Hawley or done in the normal routine, course, and scope of the agency or employment of Lloyd's and Mt. Hawley or their agents, officers, servants, employees, or representatives.

### G. FACTS

10. Plaintiff is the named insured under a property insurance policy—MPC0500892 (the "Policy")—issued by Lloyd's and Mt. Hawley. Pursuant to the Policy, Mt. Hawley is responsible for ninety percent (90%) of all covered losses and Lloyd's is responsible for ten percent (10%) of all covered losses. Lloyd's and Mt. Hawley are severally (but not jointly) liable solely for their own pro rata share. The Policy insures, among other things, against losses from water damage to Plaintiff's property, namely, the real property and improvements located at 11922 N L Street La Porte, Texas 77571 (the "Property" or "Days Inn").

11. The Property is a one-year-old, 23,296 sq. ft., two-story, low-rise hotel building. The Harris County Appraisal District ("HCAD") has appraised the Property for $1,800,000.00 and classified the economic building class as "Good" condition. Additionally, shows the conditions and specifications of the Property as follows:

| Building Data | |
|---|---|
| Element | Details |
| Exterior Wall | Frame / Stucco |
| Partition Type | Normal |
| Heating Type | Hot Air |
| Cooling Type | Central / Forced |
| Plumbing Type | Adequate |
| Sprinkler Type | Wet |
| Physical Condition | Avg/Normal |
| Functional Utility | Avg/Normal |
| Economic Obsolescence | Normal |
| Market Index Adjustment | 100% No Mkt Index Adjustment |
| Element | Units |
| Number of Apartment Units | 41 |
| # Stories | 2 |
| Interior Finish Percent | 100 |
| Wall Height | 10 |

12.     The building structure is wood framed and founded on a slab on grade and divided using OSB boards and insulated with Batt insulation. The exterior is comprised of stucco columns, Textone wall tiles, and synthetic stucco finish over polystyrene boards and metal lath on the front and two side elevations and wood trim on the rear elevation. The roof is finished with architectural shingles. Adjacent hotel rooms face the walking corridor with exterior view, and the lobby and guest area is located on the front left of the building.

13.     The interior finish consists of moldings, 6" hardwood baseboards, trims, custom painted-on textured drywall walls and ceilings, recessed light fixtures, and entertainment fixtures. Floor finishes consist of vinyl planks attached to baseboards and concrete substrate in living areas of the hotel rooms, while wet areas such as vanity areas, bathrooms, and kitchenettes have ceramic/porcelain tile flooring. All countertops are quartz/engineered stone.

14.     During February 14-18, 2021, all of Harris County was in a Winter Storm Warning. The storm was one of the most impactful winter events in recent history and brought power outages, burst pipes, and water damage to properties throughout Houston. The National Oceanic and

4

Atmospheric Administration estimated the 2021 Winter Storm to have cost $20.4 billion in damage, making it the costliest winter storm in U.S. history and potentially the costliest weather disaster for Texas in history, surpassing even Hurricane Harvey from 2017.

15. Soon after midnight on February 16, 2021, Days Inn's fire suppression systems (wet pipe and dry pipe systems both directly connected to the city water line) froze and about 10, 2.5-inch high pressure water pipes broke in the attic and discharged a significant amount of water into Days Inn from midnight to the morning of February 16, 2021.

16. At the same time, all of Harris County was under a boil water advisory, providing notice that the general water supply was contaminated and not safe for drinking, which indicates that the water that escaped the frozen fire suppression systems was immediately downgraded to a minimum of Category 2 water - Grey Water. Due to natural oxidation activities which occur in all water suppression systems, especially in dry pipe suppression systems where the trapped water is present, the water is contaminated with, among other things, lead, mercury, cadmium, and especially zinc. Furthermore, the water from said system saturated the building materials, resulting in a further downgrade to a Category 3 water loss – Black Water. Category 3 water contains harmful metals, unsanitary agents, harmful bacteria, and fungi, causing severe discomfort or sickness.

17. The failure of the fire suppression systems resulted in a large amount of water pouring into the building at the rate of at least 24-40 gallons per minute. The water migrated into the rooms, the insulated walls, and in between the ceilings and floorings, seriously damaging the interior of the Property. The water ultimately froze due to the low temperature. With the freezing of the water, the ice expanded, damaging the two elevations of exterior siding and two elevations of stucco.

18. Plaintiff immediately contacted Lloyd's and Mt. Hawley to notify them of the damage to the interior of the Property, including the corridors, rooms, baths, vanities, storage areas, kitchenettes, fire suppression systems, plumbing, stucco, insulation, OSB boards, and sidings.

Plaintiff's business personal property was also damaged, including furniture, beds, and appliances.

19. Lloyd's and Mt. Hawley's representative assigned the claim number 00493717 (the "Claim") to the loss. Plaintiff asked that Lloyd's and Mt. Hawley honor its contractual obligations to cover the cost of repairs to the Property.

20. The insurers then assigned Engle Martin, a third party, to administer and adjust the claim. Ben Kennedy ("Kennedy"), an adjuster of Engle Martin, then referred the claim for adjustment to individuals purporting to be or acting as adjusters, despite neither of the individual holding a license under Texas Insurance Code Chapter 4101. Said purported adjusters were Andrew Singeltary ("Singeltary"), whose Texas adjuster licensed expired on October 28, 2017, and Johnny Anastasiades ("Anastasiades"), who does not hold an adjusting license in Texas.

21. Singeltary and Anastasiades inspected the Property on April 13, 2021, nearly a month after the water loss, and on April 20, 2021, prepared a water repair cost estimate for what they claimed to be damaged ("WRCE").

22. In an attempt to undermine the loss, Singeltary and Anastasiades described the Property in WRCE as though they were describing a shack. They wrote, "[t]he structure is wood framed and founded on a slab on grade. The exterior cladding is an exterior insulating finishing system (EIFS). . . .. Interior finishes are generally typical for a hotel of this nature and consist of painted drywall walls and ceilings. Floor finishes consist of vinyl planks in the 'living areas' of the hotel rooms while wet areas such as vanity areas, bathrooms and kitchenettes have tile flooring. Finish carpentry is paint-grade wood throughout and the rooms with kitchenettes have pre-manufactured casework unit. . . . Mechanical, plumbing and electrical systems appear to be typical for a hotel of this nature. There are two fire suppression systems, a wet system and a dry system, both of which experienced leaks during the freeze event." There was no mention of the moldings, baseboards, lighting, porcelain tiles, stone countertops, insulation, stucco, etc.

6

23. Although the suppression system pipe breaks and water discharges originated from the attic of the building over the second floor, Singeltary and Anastasiades only identified water damage to the floor's perimeter on the ground level in some areas and suggested the removal of two linear feet of sheetrock. They completely ignored the obvious fact that the pipe breaks occurred in the attic, and that the water migrated from the attic into the second-level rooms, in between the wall, and then to the ground level. Removing two linear feet of the floor's perimeter would mean that the water-saturated insulation and building materials above would be left in place.

24. This reckless repair method left contaminants and bacterial growth in the walls of the multipurpose building. Furthermore, their suggested repair would put the health and safety of the employees and guests of Days Inn at risk. Notably, the Property is a hotel and is heavily regulated by the health department. Many guests could be hyperallergic to bacterial growth, causing sickness, and Days Inn would be exposed to potential liability.

25. More importantly, the water saturated the electrical systems. Water saturation within one foot of electrical wiring in any multipurpose building requires replacement to avoid fire risks. The Insurers, Singeltary, Anastasiades, and Kennedy made no recommendation to replace the saturated wiring. Not even a minimum service call was included in the repair estimate. WRCE allowed for $140,700.33 (Actual Cash Value) of repair cost for repair of the structure and $35,750.00 for the repair of the suppression system. Kennedy and Defendants ratified Singeltary and Anastasiades decision regarding the amount of loss. There was no mention of water mitigation protocol for category 2, let alone category 3 water damage in WRCE, and the recommended repairs amounted to nothing more than patchwork.

26. Despite obvious, visible water damage, Kennedy, Singeltary and Anastasiades, on their own behalf and on behalf of Lloyd's and Mt. Hawley, verbally misrepresented to Plaintiff at the time of the inspection and thereafter that damage was minimal and could be remedies by removing two

linear feet of sheetrock from the ground level perimeter of some rooms. In reality, the pipe breaks occurred in the building attic, and the water migrated from the attic into the second-level rooms and then to the main level. Removing two linear feet of the floor's perimeter would mean that the water-saturated insulation and building materials above would be left in place. This reckless repair method left contaminants and bacterial growth in the walls of this multipurpose building. Kennedy, Singeltary and Anastasiades repeated this misrepresentation again on their own behalf, and on behalf of Lloyd's and Mt. Hawley, in a letter to Plaintiff dated April 20, 2021.

27. Together, therefore, Lloyd's and Mt. Hawley and Singeltary and Anastasiades set out to deny properly-covered damages by performing a results-oriented investigation of Plaintiff's claim which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property.

28. Defendants Lloyd's and Mt. Hawley failed to perform their contractual obligation to adequately compensate Plaintiff under the terms of the Policy. All conditions precedent to recovery under the Policy have been performed by Plaintiff. Lloyd's and Mt. Hawley's conduct constitutes a breach of the insurance contract between Lloyd's and Mt. Hawley and Plaintiff.

29. Even though the Property sustained obvious damage caused by a covered occurrence, Defendants misrepresented the scope of damage to the Property and misrepresented the scope of coverage under the Policy.

30. Defendants failed to make an attempt to settle Plaintiff's claim in a fair manner, although they were aware of their liability to Plaintiff under the Policy.

31. Defendants refused to adequately compensate Plaintiff under the terms of the Policy and failed to conduct a reasonable investigation of the claim.

32. Defendants failed to offer Plaintiff a reasonable explanation for why Plaintiff's claim was denied.

33. Defendants, Lloyd's and Mt. Hawley, failed to timely acknowledge Plaintiff's claim,

begin an investigation of the claim, and request all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of the claim.

34. Defendants, Lloyd's and Mt. Hawley, failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all the necessary information.

35. Defendants, Lloyd's and Mt. Hawley, delayed full payment of Plaintiff's claim longer than allowed, and, to date, Plaintiff has not received full payment for Plaintiff's claim.

36. Since the time Plaintiff's claim was presented to Defendants Lloyd's and Mt. Hawley, the liability of Lloyd's and Mt. Hawley to pay the full claim in accordance with the terms of the Policy has been reasonably clear. Nevertheless, Lloyd's and Mt. Hawley has refused to pay, despite there being no basis on which a reasonable insurance company would have relied to deny the claim. This conduct is a violation of Lloyd's and Mt. Hawley's duty of good faith and fair dealing.

37. Plaintiff has suffered damages because of Defendants' actions described above. The mishandling of Plaintiff's claims also caused a delay in Plaintiff's ability to fully repair the Property, resulting in additional damages.

## H. CAUSES OF ACTION

38. Each of the foregoing paragraphs is incorporated by reference in the following:

### I. Breach of Contract

39. Defendants had a contract of insurance with Plaintiff. Defendants breached the terms of that contract by wrongfully denying and/or underpaying the claims, and Plaintiff was damaged thereby.

### II. Prompt Payment of Claims Statute

40. The failure of Defendants to pay for Plaintiff losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of § 542.051 et seq. of the Texas Insurance Code.

9

41. Plaintiff, therefore, in addition to Plaintiff's claims for damages, are entitled to interest and attorney's fees as set forth in § 542.060 of the Texas Insurance Code.

### III.   Violation of the Texas Insurance Code and DTPA

42. Defendants are required to comply with Chapter 541 of the Texas Insurance Code.

43. Defendants violated § 541.051 of the Texas Insurance Code by:

   1) making statements misrepresenting the terms and/or benefits of the policy.

44. Defendants violated § 541.060 by:

   1) misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

   2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff respective claims with respect to which the Insurer's liability had become reasonably clear;

   3) failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the Insurers' denial of their respective claims or offer of a compromise settlement of a claim;

   4) failing within a reasonable time to affirm or deny coverage of Plaintiff's respective claims or submit a reservation of rights to Plaintiff; and

   5) refusing to pay the claims without conducting reasonable investigations with respect to the claims.

45. Defendants violated § 541.061 by:

   1) making an untrue statement of material fact;

   2) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

   3) making a statement in a manner that would mislead a reasonably prudent

10

person to a false conclusion of a material fact;

    4)    making a material misstatement of law; and

    5)    failing to disclose a matter required by law to be disclosed.

46. At all material times thereto, Plaintiff was a consumer which purchased insurance products and services from Defendants.

47. Defendants violated the Texas Deceptive Trade Practices Act (the "DTPA") in the following respects:

    1)    Defendants represented that the agreements confer or involve rights, remedies, or obligations which they do not have, or involve, or which are prohibited by law;

    2)    Defendants failed to disclose information concerning goods or services which were known at the time of the transaction when such failure to disclose such information was intended to induce Plaintiff into a transaction that Plaintiff would not have entered had the information been disclosed;

    3)    Defendants, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)-(3) in that Defendants took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

## IV. Attorney's Fees

48. Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendants and agreed to pay reasonable attorney's fees and expenses through trial and any appeal.

49. Plaintiff is entitled to recover reasonable and necessary attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001–38.003 because Plaintiff is represented by an attorney, presented

the claim to Defendants, and Defendants did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

50. Plaintiff further prays that it be awarded all reasonable attorneys' fees incurred in prosecuting its causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## I. STATEMENT OF RELIEF

51. As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are within the jurisdictional limits of this Court. As required by Rule 47(c)(2) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff is seeking monetary relief over $1,000,000.00. A jury, however, will ultimately determine the amount of monetary relief actually awarded. Plaintiff also seeks prejudgment and post- judgment interest at the highest legal rate

## J. RESERVATION OF RIGHTS

52. Plaintiff reserves the right to prove the amount of damages at trial. Plaintiff reserves the right to amend its petition to add additional counts upon further discovery and as its investigation continues.

## K. JURY DEMAND

53. Plaintiff requests that all causes of action alleged herein be tried before a jury consisting of citizens residing in Harris County, Texas. Plaintiff tenders the appropriate jury fee.

## L. REQUIRED DISCLOSURES

54. Pursuant to Rule 194, Defendants are required to disclose, within thirty (30) days after filing it's answer, the information or material described in Rule 194.2(b)(l)-(12).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, La Porte Hospitality LLC dba Days

12

Inn, prays that upon final hearing of the case it recover all damages from and against Defendants, Lloyd's and Mt. Hawley, that may reasonably be established by a preponderance of the evidence and that Plaintiff be awarded attorney's fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**ZAR LAW FIRM**

*/s/Matthew M. Zarghouni*
Matthew Zarghouni
State Bar No. 24086085
3900 Essex Lane, Ste 1011
Houston, Texas 77027
Office: (346) 980-6600
Fax: (281) 888-3150
Matt@zar-law.com

**ATTORNEY FOR PLAINTIFF**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Matthew Zarghouni on behalf of Matthew Zarghouni
Bar No. 24086085
matt@zar-law.com
Envelope ID: 57443152
Status as of 9/21/2021 11:59 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Matthew Zarghouni | | matt@zar-law.com | 9/21/2021 10:46:28 AM | SENT |
| Brandon Kuhre | | brandon@zar-law.com | 9/21/2021 10:46:28 AM | SENT |
| Stephen Novosad | | stephen@zar-law.com | 9/21/2021 10:46:28 AM | SENT |
| Christian Avendano | | christian@zar-law.com | 9/21/2021 10:46:28 AM | SENT |